UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| RAY PADILLA, On Behalf of Himself and All Other Similarly Situated Residents,<br><br>    Plaintiff,<br><br>    v.<br><br>COSTCO WHOLESALE, INC., a Washington corporation,<br><br>    Defendant. | Case No.:<br><br>**CLASS ACTION** |

## CLASS ACTION COMPLAINT

Plaintiff Ray Padilla ("Plaintiff"), by and through his attorneys, brings this action on behalf of himself and all other similarly situated Illinois residents and residents of states with Consumer Fraud Laws similar to that of Illinois under the facts particular to this case against Defendant Costco Wholesale Inc. ("Costco" or "Defendant"), and alleges as follows:

## NATURE OF ACTION

1. Forty-six million Americans suffer from arthritis. Osteoarthritis, also called degenerative joint tissue disease, is the most prevalent and disabling form of arthritis. Osteoarthritis is caused by the breakdown of cartilage, which is the connective tissue that cushions the ends of bones within the joint. Osteoarthritis is characterized by, among other things, cartilage damage and limited motion (hereafter referred to as the "two primary symptoms of arthritis"). The disease generally occurs late in life, and most commonly affects the hands and large weight bearing joints, such as the knees, hips and back. There is no cure for arthritis and certainly no proven remedy that can regenerate joint/cartilage damage and improve joint mobility. Yet, Defendant promises relief for each of the two primary symptoms of arthritis in the form of a pill which it

markets, sells and distributes as the Kirkland Signature™[1] Glucosamine line of joint health dietary supplements.[2]

2. Joint degeneration also is a concern of many other people including active individuals, such as runners, weight lifters and those who participate in various joint intensive sports. There is no proven medication or dietary supplement that can prevent joint degeneration, such as renewing cartilage or maintaining healthy connective tissue. Yet, Defendant promises that Kirkland Glucosamine will increase joint mobility and flexibility and build cartilage.

3. For example, on each and every Kirkland Glucosamine Chondroitin product label and/or package, Defendant prominently states that Kirkland Glucosamine is "Clinically Proven Effective" for "optimum mobility" and "as a building block for healthy cartilage" and that "two tablets per day deliver" these benefits, as well as "nourishes JOINT and CONNECTIVE TISSUE" and "supports JOINT CUSHIONING" (hereafter referred to as the "joint renewal and rejuvenation" representations). On each and every Kirkland Glucosamine and MSM product label and/or package, Defendant makes similar joint renewal and rejuvenation claims and also promises that "noticeable improvement in flexibility and range of motion should be expected after taking this supplement as directed on a consistent basis."

4. In making these affirmative representations, Defendant represents to each purchaser of Kirkland Glucosamine that it has competent and reliable scientific evidence that these Products are effective in relieving and reducing the two primary symptoms of arthritis or other joint related ailments or provide joint renewal and rejuvenation.

---

[1] Kirkland Signature™ is Costco's store brand, also known as its "own-brand", "house brand", or "private label". It is available exclusively at Costco's website and Costco warehouses and is trademarked by the company. Kirkland Signature™ is one of the most successful brands in the country.

[2] The Kirkland Signature™ Glucosamine line of joint health dietary supplements include: (1) Kirkland Signature™ Extra Strength Glucosamine Chondroitin Sulfate ("Kirkland Glucosamine Chondroitin"); and (2) Kirkland Signature™ Extra Strength Glucosamine HCL and MSM ("Kirkland Glucosamine and MSM") (collectively, "Kirkland Glucosamine" or the "Products").

5. Yet, Defendant does not possess such competent and reliable scientific evidence. In fact, the Kirkland Glucosamine products are not an effective remedy for the two primary symptoms of arthritis or other joint related ailments, nor are they effective in providing joint renewal and rejuvenation. Numerous clinical studies have resulted in a finding of no efficacy for the ingredients in the Kirkland Glucosamine products and joint renewal or rejuvenation. Defendant, however, affirmatively states that these Products provide these benefits when they do not.

6. As a result, Defendant is guilty of deceptive conduct in its marketing and sales of the Kirkland Glucosamine products.

7. Defendant is also guilty of deception by omission in that, after affirmatively asserting that these Products are effective remedies against the two primary symptoms of arthritis or other joint related ailments or provide joint renewal or rejuvenation, Defendant had a duty to tell Plaintiff and the Class members that it did not have competent and reliable scientific evidence to support the efficacy representations that it makes about the Kirkland Glucosamine products.

8. Defendant represented and continues to represent that these Products can provide these benefits when the scientific evidence is that they do not and that such representations are false, misleading, and deceptive.. These were material misrepresentations concerning the only reason that Plaintiff and the Class members would have purchased Defendant's Kirkland Glucosamine products. Other than to use the Kirkland Glucosamine products to relieve the two primary symptoms of arthritis or other joint related ailments or to renew and rejuvenate joints, there is no reason for Plaintiff or the Class members to have purchased these Products. Plaintiff and the Class members would not have purchased a Kirkland Glucosamine product without believing that it provided proven relief from the two primary symptoms of arthritis or other joint related ailments or that it renewed and rejuvenated joints.

9. Thus, through the act of purchasing one of Defendant's Kirkland

Glucosamine products, Plaintiff and each Class member necessarily was deceived by Defendant's representations that these Products were effective and would provide relief from the two primary symptoms of arthritis or other joint related ailments or would renew and rejuvenate joints.

10. Plaintiff and the Class members were also deceived by Defendant in that, after affirmatively asserting that these Products would provide relief from the two primary symptoms of arthritis or other joint related ailments or renew and rejuvenate joints, Defendant committed deception by omission in that (1) it failed to inform Plaintiff and the Class members that numerous clinical studies have found no causative relationship between the ingredients in the Kirkland Glucosamine products and joint renewal or rejuvenation; and (2) that it knew that these Products did not provide the health benefits that Defendant represented they did.

11. Every purchase of the Kirkland Glucosamine products was tainted with Defendant's deceptions in that just by looking at the package on the shelf or following the directions for use, Plaintiff and the Class members would have seen Defendant's deceptive representations.

12. Defendant's deceptive marketing and advertising campaign, including the fact that the scientific evidence is that these Products do not work as Defendant represented, as well as the complete lack of any disclosure that no competent and reliable scientific evidence exists to support the representations that Kirkland Glucosamine will "help improve joint mobility, rebuild cartilage and improve joint function are designed to cause consumers to buy Kirkland Glucosamine. Defendant has succeeded. Estimated sales of joint dietary supplements, including Kirkland Glucosamine, approached $820 million in 2006.[3]

13. Plaintiff brings this action on behalf of himself and all other similarly

---

[3] 2007 Nutrition Industry Overview, Nutrition Business J., *available at* http://newhope360.com/managing-your-business/2007-nutrition-industry-overview (last visited Oct. 25, 2011).

- 4 -

situated Illinois residents and residents of states with Consumer Fraud Laws similar to that of Illinois under the facts particular to this case, who purchased the Products, to halt the dissemination of this false and misleading advertising message, correct the false and misleading perception it has created in the minds of consumers, and obtain redress for those who have purchased the Kirkland Glucosamine products.[4] Plaintiff alleges violations of the Illinois Consumer Fraud Act, 815 Ill. Comp. Stat. 502/1, *et seq.*

## **JURISDICTION AND VENUE**

14. This Court has original jurisdiction pursuant to 28 U.S.C. §1332(d)(2). The matter in controversy, exclusive of interest and costs, exceeds the sum or value of $5,000,000 and is a class action in which there are in excess of 100 class members and the members of the Class are citizens of a state different from Defendant.

15. This Court has personal jurisdiction over Defendant because Defendant is authorized to do and does conduct business in Illinois. Defendant has marketed, promoted, distributed, and sold the Kirkland Glucosamine products in Illinois, and Defendant has sufficient minimum contacts with this State and/or sufficiently avails itself of the markets in this State through its promotion, sales, and marketing within this State to render the exercise of jurisdiction by this Court permissible.

16. Venue is proper in this Court pursuant to 28 U.S.C. §§ 1391(a) and (b)

---

[4]While discovery may alter the following, Plaintiff preliminarily avers that the other with similar consumer fraud laws under the facts of this case include, but are not limited to: Arkansas (Ark. Code § 4-88-101, *et seq.*); Colorado (Colo. Rev. Stat. § 6-1-101, et seq.); Connecticut (Conn. Gen. Stat. § 42-110, *et seq.*); Delaware (Del. Code tit. 6, § 2511, *et seq.*); District of Columbia (D.C. Code § 28-3901, *et seq.*); Florida (Fla. Stat. § 501.201, *et seq.*); Georgia (GA Code § 10-1-390 *et seq.*); Hawaii (Haw. Rev. Stat. § 480-1, *et seq.*); Idaho (Idaho Code § 48-601, *et seq.*); Maine (Me. Rev. Stat. tit. 5 § 205-A, *et seq.*); Massachusetts (Mass. Gen. Laws Ch. 93A, *et seq.* ); Michigan (Mich. Comp. Laws § 445.901, *et seq.*); Minnesota (Minn. Stat. § 325F.67, *et seq.*); Missouri (Mo. Rev. Stat. § 407.010, *et seq.*); Montana (Mo. Code. § 30-14-101, *et seq.*); Nebraska (Neb. Rev. Stat. § 59-1601, *et seq.*); Nevada (Nev. Rev. Stat. § 598.0915, *et seq,*); New Hampshire (N.H. Rev. Stat. § 358-A:1, *et seq.*); New Jersey (N.J. Stat. § 56:8-1, *et seq.*); New Mexico (N.M. Stat. § 57-12-1, *et seq.*); New York (N.Y. Gen. Bus. Law § 349,*et seq.*); North Dakota (N.D. Cent. Code § 51-15-01, *et seq.*); Oklahoma (Okla. Stat. tit. 15, § 751, *et seq.*); Oregon (Or. Rev. Stat. § 646.605, *et seq.*); Rhode Island (R.I. Gen. Laws § 6-13.1-1, *et seq.*); South Dakota (S.D. Code Laws § 37-24-1, *et seq.*); Texas (Tex. Bus. & Com. Code § 17.41, *et seq.*); Virginia (VA Code § 59.1-196, *et seq.*); Vermont (Vt. Stat. tit. 9, § 2451, *et seq.*); Washington (Wash. Rev. Code § 19.86.010, *et seq.*); West Virginia (W. Va. Code § 46A-6-101, *et seq.*); and Wisconsin (Wis. Stat. § 100.18, *et seq.*).

because a substantial part of the events or omissions giving rise to Plaintiff's claims occurred while he resided in this judicial district. Venue is also proper under 18 U.S.C. § 1965(a) because Defendant transacts substantial business in this District.

## PARTIES

17. Plaintiff Ray Padilla resides in Cook County, Illinois. In or around March 2011, Plaintiff Padilla was exposed to and saw Defendant's representations by reading the front, back and sides of the Kirkland Glucosamine and MSM label at a Costco store in Chicago, Illinois. He paid approximately $25 for the bottle of Kirkland Glucosamine and MSM. The Kirkland product Plaintiff purchased was not proven to and thus could not provide the represented health benefits Defendant represented it would. Had Plaintiff known the truth about Defendant's misrepresentations and omissions, including that the scientific evidence demonstrated that these products were not effective as represented by Defendant and that Defendant did not possess competent scientific evidence to support the representations that it made about these Products, Plaintiff would not have purchased the Kirkland Glucosamine products.

18. Defendant Costco Wholesale Inc. is a public corporation incorporated under the laws of the state of Washington. Defendant's corporate headquarters is located at 999 Lake Drive, Issaquah, WA 98027. Defendant distributes, markets, and sells the Kirkland Glucosamine products to tens of thousands of consumers in Illinois and throughout the United States.

## FACTUAL ALLEGATIONS

*The Kirkland Glucosamine Products*

19. Since 2001, Costco has distributed, marketed, and sold the Kirkland Signature™ line of dietary supplements. These products include: (1) Kirkland

Signature™ Extra Strength Glucosamine/Chondroitin Sulfate; and (2) Kirkland Signature™ Extra Strength Glucosamine HCL and MSM.

20. The Kirkland Glucosamine products are sold online and in Costco stores nationwide. The following are screen shots of the Kirkland Glucosamine products:




21. Since the Products' launch, Costco has consistently conveyed the message to consumers throughout Illinois that the Kirkland Glucosamine products, with their "extra strength" formulas are clinically proven to deliver "optimum mobility" and will protect and build cartilage. Defendant's renewal and rejuvenation representations are false, misleading and deceptive.

22. Defendant represents that the claimed health benefits are achieved through the combination of ingredients in the Products. The primary active ingredient in both Kirkland Glucosamine products is glucosamine hydrochloride. Glucosamine is an amino sugar that the body produces and distributes in cartilage and other connective tissue. The Products' labeling and packaging states the benefits associated with taking glucosamine hydrochloride: "Glucosamine is a basic building block for cartilage, synovial fluid and other connective tissues, which are needed for healthy structure and function of joints." There is no competent and reliable scientific evidence that taking glucosamine—let alone through oral administration—results in the body metabolizing it

into something that builds cartilage or improves joint structure or function. In fact, clinical cause and effect studies have found no causative link between glucosamine hydrochloride supplementation and joint renewal or rejuvenation or the relief of the two major symptoms of arthritis.

23. The chondroitin sulfate in Kirkland Glucosamine Chondroitin, is a complex carbohydrate found in the body's connective tissues. On the Product's labeling and packaging, Defendant represents that chondroitin sulfate "protects existing cartilage and serves as a building block for healthy new cartilage." There is no competent and reliable scientific evidence that taking chondroitin—let alone through oral administration—results in the body metabolizing it into something that assists in building joint cartilage. Clinical cause and effect studies have found no causative link between chondroitin supplementation and joint renewal or rejuvenation or the relief of the two major symptoms of arthritis.

24. The Methylsulfonylmethane ("MSM") found in Kirkland Glucosamine and MSM products is an organic sulfur compound found in fruits, corn, tomatoes, tea, coffee, and milk. On the Product's labeling and packaging, Defendant claims that MSM "is a necessary component that works in conjunction with Glucosamine to provide the building blocks of collagen, an important component of healthy joints and connective tissue. Clinical research shows MSM increases glucosamine's effectiveness." There is no competent and reliable scientific evidence that taking MSM—let alone through oral administration—results in the body metabolizing it into something that builds cartilage or improves joint structure or function, or makes glucosamine work more effectively. Clinical cause and effect studies have found no causative link between MSM supplementation and joint renewal or rejuvenation or the relief of the two major symptoms of arthritis.

25. In fact, numerous clinical cause and effect studies have found no causative link between any of the primary active ingredients in the Kirkland Glucosamine products

alone, or in combination, and joint renewal and rejuvenation.  Nevertheless, Defendant without any scientifically valid confirmation that Kirkland Glucosamine is an effective joint treatmentt—let alone an effective treatment for *all* joints in the human body, for adults of *all* ages—prominently claims on the Products' packaging and labeling that Kirkland Glucosamine, with its "extra strength" formula, will "deliver" "optimum joint mobility", rebuild cartilage and improve joint function.  Front and side shots of the two Kirkland Glucosamine product labels appear as follows

| FRONT | LEFT SIDE |
|---|---|
|  | |
| FRONT | LEFT SIDE |



26. Defendant did not and does not have competent and reliable scientific evidence that any of the ingredients in its Kirkland Glucosamine products taken alone or in combination benefit, improve or promote joint renewal or rejuvenation. Numerous clinical studies have resulted in a finding of no efficacy for the ingredients in the Kirkland Glucosamine products and the prevention or improvement of joint degeneration or other joint ailments including relief of the two major symptoms of arthritis. Defendant's representations are false, misleading and deceptive.

*The impact of Defendant's wrongful conduct*

27. Despite the lack of competent scientific evidence and the existence of numerous clinical studies that have found no causative like between the ingredients in the Kirkland Glucosamine products and joint renewal or rejuvenation, Defendant continues to unequivocally claim that its Kirkland Glucosamine products are an effective treatment for the two primary symptoms of arthritis or other joint related ailments including regenerating joints/cartilage or improving joint mobility. Defendant continues to unequivocally represent that its glucosamine products provide joint health

benefits to all adults.

28. As the distributor of the Kirkland Glucosamine products, Defendant possesses specialized knowledge regarding the content and effects of the ingredients contained in its Kirkland Glucosamine products and is in a superior position to learn of the effects—and has learned of the effects—its Products have on consumers.

29. Specifically, Defendant affirmatively misrepresented that the Kirkland Glucosamine products, with their "extra strength formula", are clinically proven to provide "Optimum JOINT HEALTH & MOBILITY", "Help[] Build CARTILAGE", "Nourish[] JOINT and CONNECTIVE tissue" and "Support[] JOINT CUSHIONING". Having made these affirmative misrepresentations, Defendant failed to disclose that well-conducted, clinical cause-and-effect studies have found no causative relationship between the product ingredients and the prevention or improvement of joint degeneration or other related ailments and Defendant has no competent and reliable scientific evidence that its Kirkland Glucosamine products are effective in helping provide joint renewal or rejuvenation as represented or the relief of the two major symptoms of arthritis.

30. Notwithstanding these deceptive representations and material omissions, Defendant conveyed and continues to convey one uniform message: Kirkland Glucosamine, with its "extra strength formula", are clinically proven to provide "Optimum JOINT HEALTH & MOBILITY", "Help[] Build CARTILAGE", "Nourish[] JOINT and CONNECTIVE tissue" and "Support[] JOINT CUSHIONING" for all joints in the human body, for adults of all ages and for all stages of joint disease.

31. Plaintiff and Class members have been and will continue to be deceived or misled by Defendant's deceptive representations touting the effectiveness of the Kirkland Glucosamine products. The Products' sole purpose is to provide joint relief for the two major symptoms of arthritis, other joint related ailments or provide joint renewal or joint mobility. The only purpose behind purchasing said Products would be to obtain

one of these benefits. Thus, Defendant's representations and omissions necessarily deceived Plaintiff and the Class in some manner and said deception was a proximate cause of Plaintiff and the Class' injuries. There is no other reason for Plaintiff and the Class to have purchased the Defendant's Kirkland Glucosamine Products and Plaintiff and the Class would not have purchased the Products had they known Defendant's representations were false and misleading and that Defendant did not possess competent scientific evidence to support the representations that they made about these Products.

32. Plaintiff and the Class members have been damaged in their purchases of these Products in that they were deceived in some manner into purchasing Defendant's Products.

33. Defendant, by contrast, reaped enormous profits from its false marketing and sale of these Products.

## CLASS ALLEGATIONS

34. Plaintiff brings this action on behalf of himself and all other similarly situated Class members pursuant to Rule 23(a), (b)(2), and (b)(3) of the Federal Rules of Civil Procedure and seeks certification of the following Class:

**Multi-State Class Action**

> All persons who, within the applicable statute of limitations under their respective state's consumer fraud act,[5] purchased Kirkland Signature™ Extra Strength Glucosamine Chondroitin Sulfate and/or Kirkland Signature™ Extra Strength Glucosamine with MSM.
>
> Excluded from the Class are Defendant, its parents, subsidiaries, affiliates, officers and directors, and those who purchased the Kirkland Glucosamine products for the purpose of resale.

35. In the alternative, Plaintiff brings this action on behalf of himself and all other similarly situated Illinois residents pursuant to Rule 23(a), (b)(2), and (b)(3) of the

---

[5] See footnote 3 for the preliminary listing of said states.

Federal Rules of Civil Procedure and seeks certification of the following Class:

**<u>Illinois Class Action</u>**

> All Illinois residents who, within the applicable statute of limitations, purchased Kirkland Signature™ Extra Strength Glucosamine Chondroitin Sulfate and/or Kirkland Signature™ Extra Strength Glucosamine with MSM.
>
> Excluded from the Class are Defendant, its parents, subsidiaries, affiliates, officers and directors, and those who purchased the Kirkland Glucosamine products for the purpose of resale.

36. Members of the Class are so numerous and geographically dispersed that joinder of all Class members is impracticable. Plaintiff is informed and believes, and on that basis alleges, that the proposed Class contains many thousands of members. The precise number of Class members is unknown to Plaintiff.

37. Common questions of law and fact exist as to all members of the Class and predominate over questions affecting only individual Class members. The common legal and factual questions include, but are not limited to, the following:

- Whether the representations discussed herein that Defendant made about its Products were or are misleading, or reasonably likely to deceive;

- Whether Plaintiff and the Class members were deceived in some manner by Defendant's representations;

- Whether the alleged conduct constitutes violations of the laws asserted herein;

- Whether Plaintiff and Class members have been injured and the proper measure of their losses as a result of those injuries; and

- Whether Plaintiff and Class members are entitled to an award of compensatory/actual damages.

38. The claims asserted by Plaintiff in this action are typical of the claims of

the members of the Class, as the claims arise from the same course of conduct by Defendant and the relief sought is common. Plaintiff and Class members suffered injury and damages caused by their purchase of the Kirkland Glucosamine products marketed, distributed and sold by Defendant.

39. Plaintiff will fairly and adequately represent and protect the interests of the members of the Class. Plaintiff has retained counsel competent and experienced in both consumer protection and class litigation.

40. A class action is superior to other available methods for the fair and efficient adjudication of this controversy. The expense and burden of individual litigation would make it impracticable or impossible for proposed Class members to prosecute their claims individually. It would thus be virtually impossible for the members of the Class, on an individual basis, to obtain effective redress for the wrongs done to them. Furthermore, even if Class members could afford such individualized litigation, the court system could not. Individualized litigation would create the danger of inconsistent or contradictory judgments arising from the same set of facts. Individualized litigation would also increase the delay and expense to all parties and the court system from the issues raised by this action. By contrast, the class action device provides the benefits of adjudication of these issues in a single proceeding, economies of scale, and comprehensive supervision by a single court, and presents no unusual management difficulties under the circumstances here.

41. In the alternative, the Class also may be certified because Defendant has acted or refused to act on grounds generally applicable to the Class thereby making appropriate final declaratory and/or injunctive relief with respect to the members of the Class as a whole.

42. Plaintiff seeks preliminary and permanent injunctive and equitable relief on behalf of the entire Class, on grounds generally applicable to the entire Class, to enjoin and prevent Defendant from engaging in the acts described, and requiring

Defendant to provide full restitution to Plaintiff and Class members. Unless a Class is certified, Defendant will retain monies received as a result of their conduct that were taken from Plaintiff and Class members. Unless a Class-wide injunction is issued, Defendant will continue to commit the violations alleged, and the members of the Class and the general public will continue to be misled.

## COUNT I

### Violation of the Illinois Consumer Fraud Act

43. Plaintiff re-alleges and incorporates by reference the allegations contained in the paragraphs above as if fully set forth herein.

44. In Illinois, the "Consumer Fraud and Deceptive Business Practices Act" 815 Ill. Comp. Stat. 502/1, *et seq*. ("the Act"), like the consumer fraud acts of numerous other states across the nation, prohibits deceptive acts and practices in the sale of such products as Defendant's Kirkland Glucosamine products.

45. Plaintiff and the Class were injured by Defendant's deceptive misrepresentations, concealments and omissions and these misrepresentations, concealments and omissions were material and deceived Plaintiff and the Class.

49 Defendant does business in Illinois, sells and distributes its Kirkland Glucosamine products in Illinois, and engaged in deceptive acts and practices in connection with the sale of its Kirkland Glucosamine products in Illinois and elsewhere in the United States.

50. Defendant's Products purchased by Plaintiff and the Class were "consumer items" as that term is defined under the Act.

51. Defendant misrepresented and deceptively concealed, suppressed and/or omitted the material information known to Defendant as set forth above concerning its Kirkland Glucosamine products which has caused damage and injury to Plaintiff and the Class.

52. Defendant's deceptive acts occurred in a course of conduct involving trade and commerce in Illinois and throughout the United States.

53. Defendant's deceptive acts proximately caused actual injury and damage to Plaintiff and the Class.

54. Defendant intended Plaintiff and all Class members to rely on their deceptive acts.

55. The conduct of the Defendant constituted a consumer fraud under the Illinois Consumer Fraud Act and similar laws in other states.

**WHEREFORE**, Plaintiff and the Class pray as follows:

a. That the Court enter an order certifying this action as a class action—either as a multi-state class or, in the alternative, as an Illinois class;

b. That the Court enter an Order against Defendant awarding to Plaintiff and the Class compensatory/actual damages;

c. Awarding declaratory and injunctive relief as permitted by law or equity, including enjoining Defendant from continuing the unlawful practices as set forth herein;

d. Attorneys' fees, expert fees and costs; and

e. Such other and further relief as the Court deems just and proper.

DATED: October 28, 2011

By: s/Stewart Weltman
FUTTERMAN HOWARD ASHLEY
& WELTMAN, P.C.
STEWART WELTMAN
DANA PESHA
RAFAEL VARGAS
122 South Michigan Avenue, Suite 1850
Chicago, Illinois 60603
Telephone: 312-427-3600

Of Counsel:

ELAINE A. RYAN
PATRICIA N. SYVERSON
LINDSEY M. GOMEZ GRAY
2901 North Central Avenue, Suite 1000
Phoenix, Arizona 85012
Telephone: 602-274-1100

BONNETT, FAIRBOURN, FRIEDMAN
& BALINT, P.C.
TODD D. CARPENTER
600 West Broadway, Suite 900
San Diego, California 92101
Telephone:   (619) 756-6978

SIPRUT PC
JOSEPH SIPRUT
122 South Michigan Avenue
Suite 1850
Chicago, Illinois  60603
312.588.1440

Attorneys for Plaintiff